UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

ACE AMERICAN INSURANCE COMPANY
a/s/o SIDNEY FRIEDMAN

2008 Civ. 4315 (BSJ) (AJP)

Plaintiff,

- against -

**REPLY MEMORANDUM IN
LAW IN OPPOSITION TO
MOTION TO VACATE
DEFAULT JUDGMENT**

JEFFSTAR MARINE SERVICES and JEFFSTAR,
INC.

Defendants.
------------------------------------------------------------X

## PRELIMINARY STATEMENT

Plaintiff, Ace American Insurance Company a/s/o Sidney Friedman (hereinafter "ACE"),

submits this Reply to defendant's Motion to Vacate Default Judgment.    Plaintiff seeks an entry

of Default Judgment against defendant Jeffstar Marine Services, Inc. (hereinafter "JEFFSTAR")

pursuant to Rule 55(a) of the Federal Rule of Civil Procedure and plaintiff further seeks

attorneys' fees pursuant to Rule 54(2)(A) of the Federal Rules of Civil Procedure.

## STATEMENT OF FACTS

The factual basis from which plaintiff will derive its argument is the affidavit of

Christopher R. Martin and the exhibits attached thereto. As the Court can plainly see, there was

a complete and utter failure of any communication by JEFFSTAR until the default.

Mr. Friedman asserts in his Statement of Claim that starting in May 2007 he began to

have difficulties in communicating with JEFFSTAR as "Mr. Ialici had locked himself into his

boat and was not leaving his boat or taking calls from anyone, including his employees, for any

reason."[1]  With respect to this claim, a letter was sent to defendant on February 14th requesting a

response so litigation of the claim could be avoided.  (Martin Aff: ¶ 5).  Service was made on

JEFFSTAR on May 15, 2008 and a little while later a women called Mr. Martin and advised that

the situation would be dealt with when people came back to the office.  (Martin Aff: ¶ 7, 8).

Plaintiff again notified defendant on June 10, 2008 that the Answer was past due.  (Martin Aff: ¶

10).  Lastly, plaintiff notified defendant on June 18, 2008 that on Orders of the Court, an

application for default would be submitted if no Answer was filed.  (Martin Aff: ¶ 11).

JEFFSTAR finally responded, however, they advised that they would not Answer the Complaint

until the Complaint was amended and re-served on them.

### POINT I
### STANDARD OF REVIEW

The Court in *Flanagan v. Modern Concrete Corp.* Slip Copy, WL 2559377 E.D.N.Y. June

23, 2008, advised the standard for vacating default judgments.

> Under Rule 55(c), the court may set aside an entry of default "[f]or good cause
> shown." Fed.R.Civ.P. 55(c). As the Second Circuit has explained, "[b]ecause
> Rule 55(c) does not define the term 'good cause,' we have established three
> criteria that must be assessed in order to decide whether to relieve a party from
> default or from a default judgment." *Enron Oil Corp. v. Diakuhara,* 10 F.3d 90,
> 96 (2d Cir.1993) (citations omitted). Specifically, the factors to be considered in
> deciding whether to relieve a party of a default under Rule 55(c) are the
> following: "(1) whether the default was willful; (2) whether setting aside the
> default would prejudice the adversary; and (3) whether a meritorious defense is
> presented." *Id.; accord Comm. Bank of Kuwait v. Rafidain Bank,* 15 F.3d 238,
> 243 (2d Cir.1994). The Court is also permitted to consider relevant equitable
> factors, including whether failure to appear "was 'a mistake made in good-faith
> and whether the entry of default would bring about a harsh or unfair result.' "
> *Brown v. Gabbidon,* No. 06-CV-8148 (HB), 2007 U.S. Dist. LEXIS 35134, at *8
> (S.D.N.Y. May 15, 2007) (quoting *Enron Oil Corp.,* 10 F.3d at 96). The Second
> Circuit also has noted that "[a]lthough the factors examined in deciding whether
> to set aside a default or a default judgment are the same, courts apply the factors

---

[1] It is believed by Mr. Friedman that the Mr. Ialici referred to in his statement is the Mr. Aracci who is the President of JEFFSTAR. *See Martin Affidavit ¶21.*

more rigorously in the case of a default judgment ... because the concepts of finality and litigation repose are more deeply implicated in the latter action." *Enron Oil Corp.*, 10 F.3d at 96 (citation omitted).

"Default judgments 'are generally disfavored and are reserved for rare occasions.' " *State St. Bank & Trust Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 168 (2d Cir.2004) (quoting *Enron Oil Corp.*, 10 F.3d at 96). Thus, "good cause" under Rule 55(c) "should be construed generously." *Enron Oil Corp.*, 10 F.3d at 96. For example, "when doubt exists as to whether a default should be granted or vacated, the doubt should be resolved in favor of the defaulting party." *Id.* Finally, "[t]he dispositions of motions for entries of defaults and default judgments and relief from the same under Rule 55(c) are left to the sound discretion of a district court because it is in the best position to assess the individual circumstances of a given case and to evaluate the credibility and good faith of the parties." *Enron Oil Corp.*, 10 F.3d at 95 (citing *Action S.A. v. Marc Rich & Co.*, 951 F.2d 504, 507 (2d Cir.1991); *Traguth v. Zuck*, 710 F.2d 90, 94 (2d Cir.1983)).

*Id* @ *1-2.

**POINT II**
**WILLFULNESS**

Willfulness has been defined in the context of a default as conduct that is more than merely negligent or careless. *SEC v. McNulty*, 137 F.3d 732, 738 (2d Cir.1998). In the within matter, it cannot be argued that JEFFSTAR or its President was unaware of the lawsuit or the pending default. The affidavit by Mr. Aracci does not state that he was unaware of the lawsuit. Instead he states that he was under the mistaken belief that the claim was stayed due to JEFFSTAR INC. bankruptcy. This is a thinly veiled excuse for ignoring the lawsuit and the Court's Order. How would Mr. Aracci know of the stay when in the Affidavit he notes that he barely knew of the bankruptcy. (See Aracci Affidavit ¶¶3,4,5). In his letter dated June 20, 2008, written in response to our letter advising him that a default would be issued if an Answer is not filed within a week, Mr. Aracci disregards the previous correspondence by plaintiff and "announces" that they will file an Answer when certain conditions are met. Importantly, he does not mention in his letter dated June 20th that he was under the belief that the claim was stayed.

Instead the letter states that " JEFFSTAR INC. has nothing to do with this matter and would require separate counsel. Upon receipt of new summons and complaint, JEFFSTAR MARINE SERVICES counsel will respond accordingly." (See Martin Affidavit: Exhibit 6). Defendant's whole premise for vacating the default based on excusable neglect is based on the bankruptcy, however the first time this comes up is on July 3, 2008, after Judge Peck's Memo of July 2, 2008 (See Martin Affidavit: Exhibit 8). If Mr. Aracci actually believed the action was stayed against both corporate entities, it stands to reason that he would have advised this at an earlier date, especially knowing of the impending default. Accordingly, there can be no reasonable argument by defendant that it was not willful with respect to ignoring the complaint and attempts by plaintiff to have them answer.

### POINT III
### PREJUDICE

We believe that the plaintiff will be prejudiced if the default is vacated. This is a situation were the defendant has not responded to either the plaintiff's assured or the plaintiff until this default. We believe the defendant will use the litigation as a delay tactic in order to siphon funds away from JEFFSTAR so as to be able to avoid paying any future judgment on the merits. As stated by Mr. Aracci, JEFFSTAR is presently in arrears for rent due to JEFFSTAR INC. and he intends to close down JEFFSTAR once JEFFSTAR, INC. is sold. (See Aracci Affidavit ¶¶6, 10).

### POINT IV
### MERITORIOUS DEFENSE

As pointed out in *Flanagan (supra)* the Second Circuit has held that a defendant seeking to vacate an entry of default for meritorious defense must present some evidence beyond conclusory denials to support his defense. The test of such a defense is measured not by whether

4

there is a likelihood that it will carry the day, but whether the evidence submitted, if proven at trial, would constitute a complete defense. *Flanagan(cites omitted) @ \*3.*

Defendant's claim for a meritorious defense relies on a self-serving Affidavit with nothing more than questionable and unsupported statements. In his affidavit, Mr. Aracci states that defendant did not improperly winterize the vessel but "as a courtesy" removed the heat exchanger from the boat, welded the heat exchanger, reinstalled the heat exchanger back into the boat and ran the boat (and engine) in the bay to test the repair of the heat exchanger. Mr. Arraci also states, without proof, that welding the heart exchanger was a proper repair. (See Aracci Affidvait ¶¶ 17, 18). Are we to believe out of the goodness of his heart this work was performed free of charge? Of course not. This work was performed because of the faulty winterization. JEFFSTAR, like similar boatyards, invoice everything. In this instance they invoiced for mildew bags at $8.50, a sanding disc at $4.00, a silicon tube at $6.94 and tray liners and roller covers for painting at $15.00. (See Martin Affidavit: Ex. 12). It does not pass the smell test that JEFFSTAR would do all of this work unless the winterization was not proper. The Statement of Claim by plaintiff's assured and the underwriters Activity Log both indicate that the repair to the heat exchanger was done because of an improper winterization. (See Martin Affidavit: Ex: 13)

The cause of the damage was spelled out by the independent marine surveyor who investigated the incident for underwriters. On page 7 of his report he notes that there was improper winterization and welding of the heat exchanger is an improper repair. (See Martin Affidavit: Ex: 13). Accordingly, the Court should ignore the self serving conclusory statement by Mr. Arraci that the repair was proper. (Arraci Aff. ¶ 17).

Lastly, Mr. Arraci states that JEFFSTAR did not winterize the freshwater side of the engines. This is contrary to the statement given by plaintiff's assured and is also contrary to the

5

invoices submitted by JEFFSTAR. The estimate numbered 2068, marked paid in full by Carol of JEFFSTAR, states "Winterize diesel engine: Test fresh Water Antifreeze Level, Flush and Fill Raw Water Cooling System with Non-Tox Antifreeze." Estimate number 2073 states "Finish motor add 6 gallons antifreeze." (See Martin Affidavit: Ex. 12). Accordingly, we believe the veracity of Mr. Aracci's Affidavit must be called into question.

## CONCLUSION

Defendant has not provided a sufficient basis for this default to be vacated. There can be no argument that defendant was aware but choose not to respond to the Complaint. Further, the affidavit offers nothing more than conclusory self serving comments that are not supported by either JEFFSTAR's own invoicing or independent investigation. Accordingly, we ask that the Court not vacate the default and enter judgment for the plaintiff.

In the alternative, we ask the Court to impose sanctions of $1500 on the defendant to cover the attorney fees in drafting the default, papers for the Inquest and Opposition to this Motion.

**WHEREFORE**, plaintiff prays that the Court enter a Default Judgment against Jeffstar Marine Services, Inc. in the amount of $52,223.47 and attorneys' fees.

Dated: New York, New York
      July 22, 2008
      230-30

                                  CASEY & BARNETT, LLC
                                  Attorneys for ACE

                    By: _____

                                  Gregory G. Barnett (GGB-3751)
                                  317 Madison Avenue, 21st Floor
                                  New York, NY 10017
                                  (212) 286-0225

6

## **CERTIFICATION**

On July 22, 2008, I served the within *Affidavit of Christopher R. Martin and the Reply Memorandum in Law in opposition to Motion to Vacate Default Judgment*, on the parties listed below via U.S. mail as follows:

The Law Offices of Daniel R. Olivieri, P.C.
100 Jericho Quadrangle, Suite 233
Jericho, NY 11753

Gregory G. Barnett